# United States Court of Appeals for the Federal Circuit

2009-1191

TRUSTEES IN BANKRUPTCY OF NORTH AMERICAN RUBBER THREAD CO., INC.,

Plaintiff,

and

FILMAX SDN. BHD., HEVEAFIL USA INC.,
and HEVEAFIL SDN. BHD.,

Plaintiffs-Appellees,

v.

UNITED STATES,

Defendant-Appellant.

Jay C. Campbell, White & Case LLP, of Washington, DC, argued for plaintiffs-appellees. With him on the brief was Walter J. Spak.

Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. With her on the brief were Michael F. Hertz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Stephen C. Tosini, Trial Attorney.

Appealed from: United States Court of International Trade

Senior Judge Richard W. Goldberg

# United States Court of Appeals for the Federal Circuit

2009-1191

TRUSTEES IN BANKRUPTCY OF NORTH AMERICAN RUBBER THREAD CO., INC.,

Plaintiff,

and

FILMAX SDN. BHD., HEVEAFIL USA INC.,
and HEVEAFIL SDN. BHD.,

Plaintiffs-Appellees,

v.

UNITED STATES,

Defendant-Appellant.

Appeal from the United States Court of International Trade in
consolidated case nos. 05-00539 and 05-00659,
Senior Judge Richard W. Goldberg.

_____

DECIDED:  February 1, 2010
_____

Before MICHEL, Chief Judge, FRIEDMAN and GAJARSA, Circuit Judges.

Opinion for the court filed by Chief Judge MICHEL.  Dissenting opinion filed by Circuit Judge GAJARSA.

MICHEL, Chief Judge.

The Department of Commerce (Commerce) entered an antidumping duty order in 1992 covering extruded rubber thread from Malaysia.  In 2004, the foreign industry (Heveafil) asked Commerce to conduct a changed circumstances review, arguing that

the duty order should be revoked with the revocation effective October 1, 1995, because the domestic industry (North American Rubber Thread) had declared bankruptcy and ceased operations. The Trustees in Bankruptcy of North American Rubber Thread (NART) agreed that circumstances had changed and the duty order should be revoked, but they argued during the changed circumstances review that the effective date of October 1, 1995, was incorrect, and the revocation should be effective only as of October 1, 2003. Commerce conducted the changed circumstances review and agreed with NART. As such, the duty order was revoked effective October 1, 2003.

In 2005, NART and Heveafil asked Commerce to conduct a second changed circumstances review, arguing that, because NART had changed its mind about the proper effective date, the duty order should be re-revoked effective October 1, 1995, instead of October 1, 2003. Commerce declined to undertake the second changed circumstances review, holding that, because the order had already been revoked, there was no longer an order that could be reviewed. In the Court of International Trade (CIT), NART and Heveafil challenged Commerce's refusal to conduct the second changed circumstances review, but the United States opposed the CIT litigation on two grounds. First, the United States argued that the CIT did not have jurisdiction to hear NART's or Heveafil's challenge to Commerce's refusal to conduct a changed circumstances review. Second, the United States argued that NART was judicially estopped from offering an argument in the CIT contrary to the argument it offered at Commerce during the first changed circumstances review. The CIT found that it had jurisdiction over the challenges under 28 U.S.C. § 1581(i)(4) and that NART was not precluded by the doctrine of judicial estoppel from bringing its challenge. Because we

find that the CIT had jurisdiction over NART's challenge but not Heveafil's challenge, and because we find that NART was judicially estopped from challenging the October 1, 1995 effective date, we affirm in part, reverse in part, and vacate in part.

## I.    BACKGROUND

Commerce administers the antidumping duty law, under which the United States imposes duties on imports of merchandise sold below its fair value. In order for duties to be imposed on imported merchandise, an antidumping duty order relating to that merchandise must first be entered. After entry of an antidumping duty order, Commerce can—at the request of any party affected by the order—undertake a "changed circumstances" review of the order. 19 U.S.C. § 1675(b)(1). This review can result in the revocation of the order as of an effective date that is determined by Commerce. 19 U.S.C. § 1675(d).

Here, in 1992, Commerce entered an antidumping duty order covering extruded rubber thread from Malaysia. Extruded Rubber Thread from Malaysia, 57 Fed. Reg. 46,150 (Oct. 7, 1992). In 2004, Heveafil, as a foreign producer whose merchandise was subject to the duty order, asked Commerce to conduct a changed circumstances review of the order, arguing that North American Rubber Thread, the sole domestic producer of rubber thread, had filed for bankruptcy and ceased operations, warranting revocation of the antidumping duty order. Heveafil asked for the order to be revoked retroactive to October 1, 1995, because this would cover all unliquidated entries still controlled by Customs and Border Protection. During the 2004 changed circumstances review, NART (the successor-in-interest to North American Rubber Thread) argued against Heveafil, agreeing with Heveafil that the order should be revoked, but urging

2009-1191                                              3

Commerce to make the effective date of the revocation October 1, 2003, covering only the unliquidated entries that had not yet been the subject of an annual administrative review of the order. NART contends that it was in its best interest to argue in 2004 that the effective date of the revocation should be 2003. Commerce agreed with NART and revoked the order retroactive only to October 1, 2003.

Heveafil brought an action in the CIT under 28 U.S.C. § 1581(c), challenging the effective date of the revocation. That action is not at issue in this appeal, but it remains pending and is stayed awaiting resolution of this case. During the pendency of that action, though, Heveafil and NART reached a settlement agreement resolving their dispute over the antidumping duty order. As a result of the settlement agreement, NART believed it was in its best interest to argue that the order should have been revoked with an effective date of 1995.

Thus, despite NART's argument against the October 1, 1995 revocation date in the 2004 changed circumstances review, and despite NART's having prevailed on this issue, NART asked Commerce in 2005 to conduct a second changed circumstances review, now urging Commerce to re-revoke the antidumping duty order effective October 1, 1995. NART argued that its failure to possess any interest in the enforcement or existence of the order after October 1, 1995, warranted revocation of the order as of that date. On June 15, 2005, Commerce notified NART that it was refusing to initiate the second changed circumstances review, arguing that it was unable to revoke "an order to cover entries subject to a completed administrative review." Trs. in Bankr. of N. Am. Rubber Thread Co., Inc. v. United States, 464 F. Supp. 2d 1350, 1353 (Ct. Int'l Trade 2006) ("NART I").

Both Heveafil and NART challenged Commerce's refusal to initiate the second changed circumstances review. They invoked the CIT's residual jurisdiction statute, 28 U.S.C. § 1581(i)(4), which grants the CIT jurisdiction over suits against the United States arising out of administration and enforcement of the laws relating to duties on imported merchandise. The United States brought a motion to dismiss for lack of jurisdiction, arguing that § 1581(i) was unavailable. The CIT denied the government's motion to dismiss. Id. at 1364. The CIT held first that NART's change of heart as to the proper effective date for revocation of the order should not bar NART's new argument, even in light of its successful earlier argument to the contrary. Id. at 1357. The CIT next held that, although no other portion of 28 U.S.C. § 1581 provided jurisdiction, subject-matter jurisdiction over NART's and Heveafil's claims was available under 28 U.S.C. § 1581(i)(4). Id. at 1354-58. The CIT also considered and rejected the government's argument that a 1984 amendment to 19 U.S.C. § 1516a precluded the CIT from exercising jurisdiction over refusals by Commerce to initiate changed circumstances reviews. Id. at 1358-64. On appeal to this court, the government contests each of these holdings.

After the decision in NART I, the CIT considered the merits of the challenge to Commerce's decision not to conduct the second changed circumstances review and remanded to Commerce for an explanation of why Commerce's decision did not constitute a departure from its normal practice of initiating changed circumstances reviews whenever the domestic industry expressed no interest in the continuation of an antidumping duty order. Trs. in Bankr. of N. Am. Rubber Thread Co., Inc. v. United States, 533 F. Supp. 2d 1290 (Ct. Int'l Trade 2007) ("NART II"). On remand, Commerce

once again refused to conduct the changed circumstances review, attempting to distinguish the earlier "standard practice" reviews cited by the CIT. The CIT rejected these remand results, ordering the second changed circumstances review to proceed. Trs. in Bankr. of N. Am. Rubber Thread Co., Inc. v. United States, No. 05-00539, 2008 WL 2350925 (Ct. Int'l Trade Jun. 10, 2008) ("NART III"). This appeal followed, with the United States appealing only the jurisdictional and judicial estoppel issues decided in NART I, not the merits issues decided in NART II or NART III.

## II.  DISCUSSION

As with other questions of law, we review the CIT's jurisdictional rulings without deference. JCM, Ltd. v. United States, 210 F.3d 1357, 1359 (Fed. Cir. 2000). We review the CIT's decision not to apply the judicial estoppel doctrine for abuse of discretion. Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1565 (Fed. Cir. 1996).

Taking first the question of jurisdiction over Heveafil's claim, the CIT exercised subject-matter jurisdiction under 28 U.S.C. § 1581(i)(4), the residual jurisdiction portion of 28 U.S.C. § 1581, which provides in relevant part that

> the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for--
>
> . . . .
>
>  (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
>
> . . . .
>
> (4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

28 U.S.C. § 1581(i).  We have limited this very broad language so that § 1581(i)(4) "'may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate.'"  Int'l Custom Prods. v. United States, 467 F.3d 1324, 1327 (Fed. Cir. 2006) (quoting Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356, 359 (Fed. Cir. 1992)).

Under this rule, Heveafil cannot invoke § 1581(i)(4) to gain subject-matter jurisdiction over its claim that Commerce should have initiated the second changed circumstances review of the extruded rubber thread antidumping duty order.  Were it to pursue this claim in the CIT, the best outcome Heveafil could obtain would be an order compelling Commerce to undertake the changed circumstances review, and the best outcome of that review for Heveafil would be Commerce deciding that the revocation of the duty order should be effective October 1, 1995.  But Heveafil has available to it another route to the same ultimate outcome.  Heveafil brought a CIT challenge to Commerce's decision in the first changed circumstances review.  The remedy available under Heveafil's challenge to the result of the first changed circumstances review is clearly not "manifestly inadequate."  In fact, should Heveafil prevail, the remedy in that action would be even more favorable to Heveafil than would be the remedy in this action; Heveafil could get an order from the CIT compelling Commerce to change the effective date of the revocation, not just an order compelling Commerce to undertake a review that might lead to the effective date Heveafil seeks.  There is no question about the CIT's jurisdiction over that complaint; the CIT has jurisdiction under 28 U.S.C. § 1581(c).  Thus, for Heveafil's claim here, "jurisdiction under another subsection

of § 1581 is . . . available, [and] the remedy provided under that other subsection [is not] manifestly inadequate," so the rule in International Custom Products bars jurisdiction over the present claim under § 1581(i)(4). 467 F.3d at 1327. Because the CIT lacks jurisdiction to hear Heveafil's challenge to Commerce's refusal to initiate the second changed circumstances review, we reverse the portion of the CIT's decision in NART I finding such jurisdiction.

There is, however, no such jurisdictional infirmity with respect to NART's claims. The United States argues that NART could have brought an action challenging the result of the first changed circumstances review, as Heveafil did. Because NART chose not to bring this action, the United States argues, International Custom Products bars NART's attempt to use § 1581(i)(4) now. But there was no change in circumstances between the original issuance of the antidumping duty order and the first changed circumstances review that would have warranted NART's supporting the 1995 revocation date during that review. Because NART did not argue for the 1995 date during the first changed circumstances review, it could not have brought a CIT challenge under § 1581(c) to Commerce's rejection of such an argument, and it could not have joined Heveafil's § 1581(c) challenge to the results of the first changed circumstances review. Circumstances did change, though, between the first changed circumstances review and the parties' request for a second changed circumstances review: thanks to the settlement agreement between NART and Heveafil, there was no longer any interest on the part of the domestic industry in maintaining the antidumping duty order for the 1995-to-2003 period.

NART argues that a second changed circumstances review was warranted and that it should be able to bring a judicial challenge to Commerce's refusal to initiate such a review. We agree. There is nothing in § 1581(i)(4) that precludes judicial review of Commerce refusals to initiate changed circumstances reviews. We have described § 1581(i)(4) as a "broad residual jurisdiction provision" and as a "catch-all provision," and we see no reason to limit that broad scope to exclude judicial review of the type of Commerce decision being challenged by NART here. Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987); Norcal/Crosetti Foods, Inc., 963 F.2d at 359. Section 1581(i)(4) provides for jurisdiction in the CIT over "any civil action commenced against the United States . . . that arises out of any law of the United States providing for . . . administration and enforcement with respect to" any "duties . . . on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i). When Commerce considered and denied the parties' request for a second changed circumstances review of the antidumping duty order, it was unquestionably engaged in "administration and enforcement" of a United States law "providing for . . . duties . . . on the importation of merchandise for reasons other than the raising of revenue." Id. Because NART's claim in the CIT is a "civil action commenced against the United States . . . that arises out of" this action by Commerce, § 1581(i)(4) gives the CIT jurisdiction to hear the claim. Id.

As discussed above, there is one important limitation on § 1581(i)(4): it is not available to circumvent relief that is or could have been available under other portions of § 1581. But this limitation does not apply to NART's claim the way that it does to Heveafil's claim. While Heveafil can get the relief it seeks through its § 1581(c) action,

NART could not have brought its challenge under § 1581(c). That subsection grants the CIT jurisdiction over "any civil action commenced under [19 U.S.C. § 1516a]." 28 U.S.C. § 1581(c). Section 1516a, in turn, provides for review of decisions not to initiate changed circumstances reviews only when those decisions are published in the Federal Register, and Commerce's decision not to initiate the changed circumstances review in this case was not so published. Additionally, NART will have no future opportunity to seek judicial review under § 1581(c), because there will be no future Commerce decisions regarding the duty order at issue here. The antidumping duty order has been revoked (because revocation was the result of the first changed circumstances review), so there will be no more annual administrative reviews whose results NART will be able to challenge in the CIT. Because NART has no current or future opportunities to get judicial review of Commerce's decision, we see no reason that it should not be permitted to use § 1581(i)(4) to bring its CIT action. We therefore affirm that portion of the CIT's decision finding subject-matter jurisdiction to hear NART's claim.

Because we find that the CIT has jurisdiction under 28 U.S.C. § 1581(i)(4) to hear NART's challenge to Commerce's refusal to initiate the second changed circumstances review, we need not reach the issue, raised by the United States, of whether Congress's 1984 amendment of 19 U.S.C. § 1516a(a)(1)(B) stripped the CIT of its § 1581(c) jurisdiction over actions challenging refusals by Commerce to initiate changed circumstances reviews.

Turning to the remaining issue, we find that NART is precluded by the doctrine of judicial estoppel from arguing in the CIT in favor of a revocation date of October 1, 1995, given its earlier successful argument to Commerce that a revocation date of

October 1, 1995, was inappropriate. "'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)). The determination of whether a party's inconsistent legal positions constitute judicial estoppel is informed by three factors, which the Supreme Court did not intend to be exclusive: (1) whether the "party's later position [is] 'clearly inconsistent' with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled'"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire, 532 U.S. at 750-51 (quoting United States v. Hook, 195 F.3d 299, 306 (7th Cir. 1999); Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir. 1982)). Judicial estoppel applies just as much when one of the tribunals is an administrative agency as it does when both tribunals are courts. Lampi Corp. v. Am. Power Prods., Inc., 228 F.3d 1365, 1377 (Fed. Cir. 2000) ("The [judicial estoppel] doctrine also applies to administrative proceedings in which a party obtains a favorable order by making an argument that it seeks to repudiate in a subsequent judicial proceeding.") (applying Seventh Circuit law); accord S. Coast Air Quality Mgmt. Dist. v. Envtl. Prot. Agency, 472 F.3d 882, 891-92 (D.C. Cir. 2006); Simon v. Safelite Glass Corp., 128 F.3d 68, 71-74 (2d Cir. 1997); Portela-Gonzalez v.

<u>Sec'y of the Navy</u>, 109 F.3d 74, 77-78 (1st Cir. 1997); <u>Risetto v. Plumbers & Steamfitters Local 343</u>, 94 F.3d 597, 604 (9th Cir. 1996).

Here, NART argues that none of these three factors is present. First, NART suggests that its inconsistent positions (opposed to the 1995 revocation date in the Commerce review and in favor of the 1995 date now) are excused because the antidumping laws contemplate the possibility of the domestic industry's interests changing over time. Second, NART argues that, while it succeeded in persuading Commerce to adopt its position in the first changed circumstances review, it has not tried to mislead either Commerce or the CIT in presenting its inconsistent positions. Finally, NART notes that its change in position is not unfair to Heveafil, because NART's and Heveafil's interests are now aligned in favor of NART's current position. We are not persuaded by any of these arguments.

NART admits that its current position is inconsistent with the position it took during Commerce's first changed circumstances review. The United States contends that this is enough to establish that the first <u>New Hampshire</u> factor is present. NART argues, though, that its inconsistency is excused because "U.S. antidumping law contemplates that the domestic industry's interests with respect to enforcement of an antidumping order may change over time in light of intervening events." NART correctly notes that any time a representative of the domestic industry requests revocation of an antidumping order through a changed circumstances review, it must necessarily take a position contrary to the position it successfully took in getting the antidumping duty order established in the first place. Thus, argues NART, adopting the theory of judicial estoppel proffered by the United States could create the absurd result of no domestic

industry representative ever being able to seek revocation due to changed circumstances. But we do not find it necessary to paint so broadly with the judicial estoppel brush. Instead, we see no problem with allowing the domestic industry to support imposing the antidumping duty order in the first place and then to support revoking the order later (as long as circumstances have appropriately changed). As NART points out, this situation is explicitly contemplated by the antidumping laws. We do, however, see a judicial estoppel problem pertaining to the narrower issue of the proper effective date of a revocation when the domestic industry first opposes a particular revocation date (and prevails on that point) and then later supports the very same date of revocation it previously opposed. This is not a situation where the domestic industry has ceased manufacturing the products at issue, warranting revocation of a duty order that made sense when there was a domestic industry to protect. Instead, this is a change in a party's legal position "simply because his interests have changed." New Hampshire, 532 U.S. at 749. NART's positions here are inconsistent, so the first New Hampshire factor is present.

The second factor is also present. The Supreme Court phrased this factor as "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" Id. at 750 (quoting Edwards, 690 F.2d at 599). Here, the United States focuses on the first clause, correctly pointing out that NART succeeded during the first administrative review in getting Commerce to adopt NART's view that October 1, 1995, was an inappropriate effective date for revocation of the antidumping duty order. By contrast, NART focuses

on the second clause, arguing that, because antidumping law permits parties to change their minds based on changed factual circumstances, no reasonable person could presume that NART's inconsistent positions were intended to mislead either Commerce or the CIT.

In deciding whether the second factor is present, we agree with the United States that New Hampshire places the focus on whether the party offering a new inconsistent position succeeded in persuading the first tribunal to adopt its earlier position, not on whether there was some intent to mislead one of the tribunals. In New Hampshire, there had been a boundary dispute between the states of Maine and New Hampshire, and the parties settled their dispute by having the Supreme Court enter a consent decree establishing (among other things) that the phrase "the middle of the [Piscataqua] River" should be interpreted to refer to the centerline of the main navigational channel of the river. Id. at 745. Twenty-five years later, New Hampshire sought to repudiate its consent to this definition based on its asserted new understanding of historical documents that used the phrase "the middle of the [Piscataqua] River." Id. at 756. The Supreme Court held that judicial estoppel barred New Hampshire from making this argument, because it had successfully argued to the contrary in the earlier case. Id. at 752. In so ruling, the court found that New Hampshire had been successful in getting a court to adopt its earlier position, but the court did not discuss whether there was any suggestion that New Hampshire had misled the earlier court. Id. Thus, the important portion of the second New Hampshire factor seems to be whether the party was successful in getting a court to adopt its earlier position, not whether the party misled

the courts. Here, NART succeeded in getting Commerce to adopt its earlier position, so the second factor is present.

The third factor that informs decisions on judicial estoppel is "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 751. NART points out that the only parties to the first and second changed circumstances reviews are NART and Heveafil, and NART argues that Heveafil cannot be prejudiced by NART's new argument, because NART's and Heveafil's interests are now aligned (by virtue of the settlement agreement between the parties). This is true enough, but it ignores the fact that NART is not seeking to advance its new argument solely in administrative proceedings at Commerce to which NART and Heveafil are the only parties. NART also seeks to advance this argument in judicial proceedings against the United States in the CIT. In those proceedings, the United States is a party, and the interests of the United States do not align with NART's interests. The United States has a valid interest in not having to review previously-revoked antidumping duty orders in perpetuity at the whim of any interested party. At some point, the revocation of an order must be final. Permitting NART to advance its argument here puts that finality at risk, opening up the possibility of interested parties seeking re-revocation (or re-imposition) of already-revoked antidumping duty orders years after the original final decisions.[1]

---

[1] While Commerce has a duty to conduct administrative reviews, changed circumstances reviews, and sunset reviews of existing antidumping duty orders, Congress has not charged Commerce with reviewing revoked antidumping duty orders. We hold that the United States has a legitimate interest in not reviewing the many previously-extant duty orders that have been terminated under the various review schemes established by Congress. Forcing Commerce to review all these orders in

Further, barring NART from making this new inconsistent argument does not prejudice NART's interests. There is still an opportunity for the CIT to review the date of revocation in the pending litigation brought by Heveafil under 28 U.S.C. § 1581(c) to challenge Commerce's original decision in the first changed circumstances review. NART's support of Heveafil's proposed revocation date is surely a relevant factor in that litigation. Given that permitting NART to maintain its new position, inconsistent with its earlier position, would cause prejudice to the United States, and given that barring NART from maintaining its new inconsistent position would not prejudice NART, the third New Hampshire factor is present. Because the three New Hampshire factors are present, NART is judicially estopped from arguing in the CIT that the proper effective date for revocation of the antidumping duty order is October 1, 1995.

In addition to the three factors expressly laid out in New Hampshire, the Supreme Court stated:

> In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts. In this case, we simply observe that the factors above firmly tip the balance of equities in favor of barring New Hampshire's present complaint.

532 U.S. at 751.

During the first changed circumstances review, in which Heveafil urged that the antidumping order should be revoked effective 1995, NART supported revocation but opposed that date and instead urged a 2003 effective date. Commerce adopted the latter date. When NART and Heveafil sought a second changed circumstances review,

---

perpetuity could substantially increase the time and effort Commerce expends in reviewing orders.

its sole purpose was to change the effective revocation date to 1995, as Heveafil already had proposed and to which NART had previously objected. NART did not argue that the original effective date was erroneous, that there were any objective factual changes that justified such a change, or that its "prior position was based on inadvertence or mistake." Id. at 753. All it stated was that it had changed its mind about the proper effective date—apparently as a result of a settlement it had reached with Heveafil of a dispute over the antidumping order.

In our view, NART did not provide an adequate reason for its change in position that would justify Commerce changing the effective date of the antidumping order's revocation. Once a party takes a position in litigation, it cannot lightly about-face and subsequently take the opposite position in later litigation. Something more than what NART asserted is necessary before a court or administrative body should change its prior position, which presumably was taken only after full consideration and which a party persuaded the tribunal to adopt. Having originally successfully urged Commerce to adopt the 2003 revocation date, NART's subsequent decision that an earlier effective date was more to its liking was not sufficient to warrant it to change its position, even though the statute implicitly recognizes that the domestic industry's interests may change over time. Regardless of whether this "[a]dditional consideration[]" is sufficient on its own to warrant holding that NART's new argument is barred by judicial estoppel, it is certainly sufficient in combination with the three New Hampshire factors discussed above.

Because the CIT does not have jurisdiction to hear Heveafil's challenge to Commerce's refusal to initiate the second changed circumstances review, and because

NART is estopped from arguing to the CIT that Commerce should have initiated the review in order to change the effective date of the revocation, neither party is capable of arguing its claim in the CIT. Therefore, we vacate the portion of the CIT's judgment ordering Commerce to initiate the second changed circumstances review. Because remand would be futile, we do not remand for further proceedings.

### III. CONCLUSION

The portion of NART I finding that the CIT had subject-matter jurisdiction over Heveafil's claim is reversed. The portion of NART I finding that the CIT had subject-matter jurisdiction over NART's claim is affirmed. The portion of the CIT's judgment ordering Commerce to initiate a changed circumstances review is vacated.

### IV. COSTS

No costs.

<u>AFFIRMED-IN-PART, REVERSED-IN-PART, AND VACATED-IN-PART</u>

# United States Court of Appeals for the Federal Circuit

2009-1191

TRUSTEES IN BANKRUPTCY OF NORTH AMERICAN RUBBER THREAD CO., INC.,

Plaintiff,

and

FILMAX SDN. BHD., HEVEAFIL USA INC.,
and HEVEAFIL SDN. BHD.,

Plaintiffs-Appellees,

v.

UNITED STATES,

Defendant-Appellant.

Appeal from the United States Court of International Trade in
consolidated case nos. 05-00539 and 05-00659,
Senior Judge Richard W. Goldberg.

GAJARSA, <u>Circuit Judge</u>, dissenting.

I join the majority opinion with respect to the jurisdictional issues, but I respectfully dissent from the majority's use of judicial estoppel. Under the doctrine of judicial estoppel, a court "prevents a party who prevails on one ground in a lawsuit from then repudiating that ground in order to prevail in another lawsuit." <u>Lampi Corp. v. Am. Power Prods., Inc.</u>, 228 F.3d 1365, 1377 (Fed. Cir. 2000). We have applied judicial estoppel "to administrative proceedings in which a party obtains a favorable order by making an argument that it seeks to repudiate in a subsequent judicial proceeding." <u>Id.</u> Courts invoke judicial estoppel to guard against the "'risk of inconsistent court

determinations,'" thereby "'protect[ing] the integrity of the judicial process.'"  New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting United States v. C.I.T. Constr. Inc., 944 F.2d 253, 259 (5th Cir. 1991) and Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir. 1982)).  But judicial estoppel no longer serves its purpose when a party has failed to persuade a court or agency to adopt its position and a court faces no risk of reaching an inconsistent determination.  With an appeal pending, the risk of reaching inconsistent determinations has yet to materialize.  In short, a party has yet to successfully persuade a court or agency to adopt its position for the purposes of judicial estoppel when a decision is pending appeal and the appeal relates directly to the party's original legal position.

In this case, Heveafil, USA, Inc. (Heveafil) has appealed the Department of Commerce's (Commerce) determination to revoke its antidumping duty order as of October 1, 2003.  The Court of International Trade (CIT) stayed Heveafil's appeal pending the result of this case.  Because CIT could reverse Commerce's determination and hold that the antidumping duty order should be revoked as of October 1, 1995, the Trustees in Bankruptcy of North American Rubber Thread Co.'s (NART) current position may be completely consistent with CIT's determination.  The majority avoids addressing this difficult legal issue by ignoring the consequences of CIT reversing the revocation's effective date.  With the pending appeal in mind, the possibility that NART's earlier position persuades CIT, instead of its current position, is an insufficient reason to apply judicial estoppel.  Although no federal court of appeals has addressed this issue, the Supreme Court's reasoning in New Hampshire v. Maine suggests that judicial estoppel is not appropriate here.

In New Hampshire, the Court enumerated three non-exclusive factors to consider in applying judicial estoppel. "First, a party's later position must be clearly inconsistent with its earlier position." Id. at 750 (internal quotation marks omitted). "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" Id. (quoting Edwards, 690 F.2d at 598). Third, courts consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 751. The second factor relates directly to the purpose of judicial estoppel and is at issue here.

The Court's explanation of the second factor demonstrates how reversal on appeal can make judicial estoppel inappropriate. The Court explained, "Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' and thus poses little threat to judicial integrity." Id. at 750–51 (quoting C.I.T. Constr. Inc., 944 F.2d at 259). In theory, the purpose of judicial estoppel is "'to protect the integrity of the judicial process,' by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" Id. at 749–50 (quoting Edwards, 690 F.2d at 598 and United States v. McCaskey, 9 F.3d 368, 378 (5th Cir. 1993)). If an appellate court reverses a decision that relied on a party's earlier position, then the risk of inconsistent court determinations evaporates. In such circumstances, a party's later position will remain inconsistent with its earlier position, but it will no longer contradict a court determination. Without a risk that court or agency decisions will contradict, courts should resist muzzling a party with judicial estoppel. As

explained below, the risk of contradiction relevant for judicial estoppel ripens only after a party exhausts the appeals process.

The federal courts of appeals' cases that address whether judicial estoppel applies to decisions reversed on appeal demonstrate the risk of contradiction motivating the Court in New Hampshire. The Sixth and Seventh Circuits are split on whether a decision reversed on appeal constitutes "success in a prior proceeding." The Sixth Circuit refused to apply judicial estoppel to a party who asserted inconsistent positions in separate trials because the first trial verdict was reversed on appeal and thus did not satisfy the success requirement. Coal Res., Inc. v. Gulf & Western Indus., Inc., 865 F.2d 761, 773 (6th Cir. 1989) (citing Edwards, 690 F.2d at 598). In contrast, the Seventh Circuit held that a court can apply judicial estoppel when an appellate court has reversed a court determination that relied on a party's earlier position and that same party takes a position inconsistent with its earlier position in a subsequent case. Carnegie v. Household Int'l, Inc., 376 F.3d 656, 659–60 (7th Cir. 2004); see also U.S. Philips Corp. v. Sears Roebuck & Co., 55 F.3d 592, 597 (Fed. Cir. 1995) (applying judicial estoppel under Seventh Circuit law to a party who took a position in the first case when that case was reversed on different grounds and who took an inconsistent position in a subsequent case). But see McNamara v. City of Chicago, 138 F.3d 1219, 1225 (7th Cir. 1998) (suggesting that judicial estoppel does not apply to a party who abandoned a position on appeal that it successfully litigated below because the party did not obtain a favorable judgment on the basis of its position).

The Sixth Circuit's interpretation of "success" better informs this court on how to apply judicial estoppel to a party when the case adopting the party's earlier position is pending appeal. According to the Sixth Circuit, a decision adopting a party's earlier

position, but that is overturned on appeal, does not impugn the integrity of the judicial process because there is no longer a risk of inconsistent court determinations. <u>See Coal Res.</u>, 865 F.2d at 773 ("We reject [appellant's] judicial estoppel argument because [appellee] was not successful in the prior trial. Its verdict was reversed on appeal."). Although the Sixth Circuit briefly addressed the issue, its conclusion better serves the purpose of judicial estoppel. Without a risk of inconsistent court decisions, judicial estoppel ceases to serve its purpose. Of course, there is still a risk of inconsistent court determinations and judicial estoppel may be appropriate if the appellate court reverses on an issue that does not implicate the party's earlier position. But as the Sixth Circuit's opinion implies, judicial estoppel should not apply when the appellate court reverses on an issue that directly relates to the earlier position.

Similarly, a party who has persuaded a lower court or agency to adopt its earlier position has not yet <u>successfully</u> persuaded a court to accept its position if an appeal is pending that directly relates to the party's earlier position. To be sure, any two courts that consider the same issue could reach inconsistent results when the same party advocates differing positions. But if the mere potential of inconsistent results triggered judicial estoppel, then success would not matter at all. The better view is that the risk of inconsistent court determinations materializes only when the party is ultimately successful in persuading a court, including the appeal. When an appeal is pending, there is a possibility that the appellate court's decision will be <u>consistent</u> with the party's later position.

The consequences of a potential reversal on appeal in this case demonstrate why the Sixth Circuit's interpretation of "success" is more likely the type of "success" that the Court considered in <u>New Hampshire</u>. If CIT reverses Commerce, holding that

the effective date of revocation is October 1, 1995, and this court estops NART from arguing that the revocation should be effective on that same date, then NART will be estopped from taking a position <u>consistent</u> with CIT's holding—even though there will be no risk that NART's later position would lead to inconsistent court decisions. This possibility demonstrates why estopping NART here does not further the purpose of judicial estoppel because "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' and thus poses little threat to judicial integrity." <u>New Hampshire</u>, 532 U.S. at 750–51 (quoting <u>C.I.T. Constr. Inc.</u>, 944 F.2d at 259).

In this case, the second changed circumstances review would be moot if CIT reverses. But another foreign market participant could revive the issue of the revocation order's effective date by requesting a subsequent changed circumstances review. In such a review, NART could not take a position consistent with CIT's reversal if we applied judicial estoppel and CIT reversed.

Finally, the court should not apply judicial estoppel while an appeal is pending here because doing so creates tension with this court's holding in <u>Biomedical Patent Management Corp. v. California, Department of Health Services</u>, 505 F.3d 1328 (Fed. Cir. 2007). This tension is apparent when one compares the Seventh Circuit's decision in <u>Carnegie</u> to <u>Biomedical Patent Management Corp.</u> In <u>Carnegie</u>, the Seventh Circuit explained that the purpose of judicial estoppel supported applying the doctrine to a party who successfully persuaded one court of its position even when that decision was reversed on appeal. 376 F.3d at 660. According to the Seventh Circuit, the purpose of judicial estoppel is to deter parties from committing perjury or defrauding the court. <u>Id.</u> A repeat litigant will have less incentive to commit perjury or defraud the court if the

litigant must maintain its position and accept the consequences in later cases. Id. To be sure, "[t]he purpose of [judicial estoppel] is to 'protect the integrity of the judicial process,' by 'prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest.'" In re Coastal Plains, Inc., 179 F.3d 197, 205 (5th Cir. 1999) (quoting Brandon v. Interfirst Corp., 858 F.2d 266, 268 (5th Cir.1988)). While the Seventh Circuit may be correct about deterring fraud, its rule appears to require a party to maintain a losing position in subsequent cases after it loses on appeal. Such a rule would run counter to Biomedical Patent Management Corp. In that case, this court held that an intervening Supreme Court decision on sovereign immunity excused the California Department of Health Services' inconsistent positions. See Biomedical Patent Management Corp., 505 F.3d at 1342. In other words, we held that judicial estoppel was inappropriate when a party changes positions to reflect a change in the law. Id. Judicial estoppel should not be applied differently to a litigant who was a party in the law-changing appeal. At least when the party asserts inconsistent legal positions—as opposed to factual positions—it would be unfair to require a litigant who is party in the law-changing case to maintain a losing legal position in subsequent litigation. The same should be true of a party that changes positions when an appeal is pending.

I recognize that this case may be a particularly attractive candidate in which to apply judicial estoppel. NART's inconsistent positions strongly suggest that it was either misrepresenting facts during the first changed circumstances review or the second. Moreover, Heveafil's chances of success on appeal may be minimal. If CIT affirms Commerce, this court should estop NART from arguing in favor of a different effective date. But ignoring the possibility that this case or another similarly situated could be

reversed on appeal makes this case an "example of the adage that 'bad facts make bad law.'" <u>Haig v. Agee</u>, 453 U.S. 280, 319 (1981) (Brennan, J., dissenting).  Therefore, I respectfully dissent and would affirm CIT's order directing Commerce to initiate a changed circumstances review.